No. 942

First Circuit

———

SANDRASS ET UX. v. PICCIOLA BROS. ET AL.

———

(February 8, 1932. Opinion and Decree.)

———

Harvey Peltier, of Thibodaux, and Daly & Hamlin, of New Orleans, attorneys for plaintiffs, appellants.

Howell & Deramee, of Thibodaux, attorneys for defendants, appellees.

MOUTON, J. These two cases were consolidated for trial on the same evidence, and will be disposed of in the following decision:

Valence Adam, one of the plaintiffs herein, was, on September 29, 1930, driving a Dodge car from the city of New Orleans towards Golden Meadows, and Calais was driving a truck, property of defendants, towards New Orleans, and in the opposite direction.

About a mile below La Rose, a collision occurred at about 8:30 a. m. between the auto and the truck.

Mr. Sandrass and his wife, owners of the Dodge Adam was driving, were seated in the rear with Ethel, a young daughter, and another little child. Mr. Hebert was sitting on the front seat, next to Adam, the driver.

Ethel was killed in the collision, Mr. Sandrass and Mrs. Sandrass were severely injured, also Adam, the driver of the Dodge.

Sandrass and his wife are suing defendants in damages for $20,304.35, and Adam in a separate suit, for $3,041.90.

Hebert, when the collision occurred, was talking to Sandrass, who was on the rear

seat. Hebert did not see the accident, and was not called as a witness in the case.

The witnesses are Sandrass, his wife, and Adam, also Calais, who was driving the truck for defendants, Leonard, driver of a bus which was going in the same direction the Dodge was traveling at the time, and Stevens, a passenger on the bus.

Adam was driving the Dodge in the same direction the bus was going, as before stated, turned to his left to go around it to pass ahead, and at about the center of the bus on its left side the collision occurred between Adam's auto and the truck Calais was driving in the opposite direction.

The situation thus presented is governed by the provisions of paragraph (a), sec. 15, title 2, Act No. 296 of 1928, which reads as follows:

"The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of on-coming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety."

It is shown that immediately or soon before Adam drove to his left to make the turn around the bus, a Ford car, driven by some unknown party, passed ahead of Adam's Dodge, and succeeded to pass ahead of the bus, and had a hairbreath escape from a collision with the truck, due to the skill of Calais, its driver, in applying his brakes in time to reduce the speed of the truck from thirty to fifteen miles an hour.

In attempting to perform the same feat, Adam unfortunately met the truck about midway of the body of the bus, and the crash occurred.

In his testimony, Adam said, he got close to the bus before he turned to his left, that the road was clear ahead; further says, when he first saw the truck, he was "in the middle of the bus."

There is nothing to indicate that the roadway was not straight at the point where the collision happened or that there was any obstruction which could have prevented Adam from seeing a good distance ahead of the bus. On the contrary, it appears from the testimony of Stevens, a passenger on the bus, that he saw the truck coming 75 or 100 feet ahead on its right side of the highway. It is therefore evident that, if Adam had looked ahead to see if the roadway was clear, he would unquestionably have seen the truck before getting midway of the body of the bus, where he testified he first saw it. Obviously Adam in going to his left to pass ahead of the bus was proceeding in direct violation of the requirements of the section of the statute, hereinabove referred to, which demands that a driver, situated as he was, should see that the left side is clearly visible and is free from on-coming traffic for a sufficient distance ahead to permit such passing to be made in safety. To account for not seeing the truck sooner, Adam seems to say that it was coming on its left side of the road, and that he could not see it from the roadway on the left side of the bus. He says, all along his testimony, that the truck was zigzagging, and to that fact more than to any other he ascribes the accident. If it were zigzagging, as claimed by Adam, the zigzagging could not have been only on the left side of the truck, but must have been on both sides of the highway, and for that reason

Adam should have seen it before he reached the "middle of the bus." This matter is, however, cleared up by Adam in his testimony where he subsequently said that the truck was about "100 feet" from the bus when he saw it zigzagging "from one side of the road to the other." Hence it must have been zigzagging from one side to the other, as we have before stated, and the fact is our deduction is confirmed by Adam, who says he saw it zigzagging 100 feet ahead of the bus. Having seen it coming towards him in a zigzagging movement, it was certainly a rash act on the part of Adam to attempt to pass ahead of that bus in front of the on-coming truck which had the right of way. Such an attempt was peculiarly reckless in the instant case, as it appears, that the roadway was only 22 feet 2 inches wide, including the dirt shoulders, each 2 feet in width, thus leaving about 18 feet for the graveled portion. The bus, it is shown, was 7 feet wide, and Adam's Dodge about 6 feet in width, a combined width of 13 feet between the two, thus leaving about 6 feet of gravel for the passage of another auto or truck on the left side of the bus.

The record shows besides that it had rained and that these shoulders were soft and over which it would have been quite risky for a car or auto to pass on if pressed by two other vehicles. It is shown that the bus was then going at a speed of about 35 miles, and it is therefore safe to say that, as Adam had overtaken it, his auto was moving at not less than 40 miles an hour. As these two were traveling at that rate, it would have been extremely dangerous for another going either way in an auto to have ventured to pass on the left side of the bus where the impact occurred.

Leonard, driver of the bus, and Stevens, passenger thereon, both testify, that the truck which they saw ahead was coming on its right-hand side of the road, and was not zigzagging, as was testified to by Adam, and which, from his evidence, he seemed to think had been the cause of the collision.

Considering this case from every possible angle, we cannot reach any other conclusion, after careful analysis of the facts, but that the accident was the result of the fault and inexcusable negligence of Adam, driver of plaintiffs' car, and that their demand for damages was properly rejected.

### RECONVENTION

Defendants are claiming $479.50 in reconvention, $279.50 for repairs to the truck, and $200 for rental of another truck.

Numa Jeandrone, operating a garage, was called in as a witness by defendants to establish an estimate of the damages to the truck. It was shown by him that the repairs were not made for defendants, but had been made for the auto service station. It seems that the truck was traded in to Jeandrone or the auto service corporation, and that an allowance of $150 was made on the truck. He could not tell what the cost had been for the repairs, and says he sold it, after it had been repaired, for $350. If the repairs had amounted to $279.50, which defendants are claiming in reconvention, there must not have been much truck involved originally.

With that character of evidence, it would be hard to fix with any approach to legal certainty the sum which defendants would be legitimately entitled for the repairs they are asking.

Even if we thought that defendants were entitled to recover on their reconventional demand on the grounds urged by them, for the reasons above stated no judgment could be rendered on their claim in reconvention, which we find was correctly rejected.